IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>ANTHONY JAMES HANEL, and<br>COURTNEY LAPARELE CLARK,<br><br>                Defendants. | 8:19CR54<br><br>FINDINGS AND<br>RECOMMENDATION |

This matter is before the Court on the Motions to Suppress Statements and Evidence and Request for Hearing filed by Defendants, Anthony James Hanel and Courtney L. Clark. (Filing No. 53; Filing No. 55). Defendants filed briefs in support of the motions (Filing No. 54; Filing No. 56) and the government filed a brief (Filing No. 60) in opposition.

The Court held an evidentiary hearing on the motions on May 14, 2019. Defendant Hanel was present with his attorney, Richard H. McWilliams, and Defendant Clark was present with her attorney, Richard P. McGowen. The government was represented by Assistant United States Attorney, Sean P. Lynch. Omaha Police Department officers John Harney and Cory Buckley testified on behalf of the government. The Court received into evidence, without objection, Exhibit 1[1] offered by the government and Exhibits 101-114 offered by Defendant Hanel. A transcript (TR.) of the hearing was prepared and filed on June 4, 2019. (Filing No. 79). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that both Defendants' motions be denied.

### BACKGROUND

In the early morning on February 5, 2019, Officers Harney and Buckley noticed a blue Dodge Durango with Minnesota license plates while patrolling the Southwest Precinct near the

---

[1] Exhibit 1 is a thumb drive containing three folders with various videos and files. (TR. 67-69). For purposes of this Findings and Recommendation, the undersigned magistrate judge will primarily refer to video clips from Officer Buckley's body camera labeled as "Gun (1)," "Gun (2)," etc. located in the folder labeled "BWC 2347 BUCKLEY" and the video clip from the cruiser's video located in the "MVR 484" folder.

area of 84th Street and Papillion Parkway. (TR. 6-7, 26, 40-41). Officer Buckley observed that the Durango's male passenger was not wearing a seatbelt, so the officers decided to follow the Durango. (TR. 10-11, 21-22, 43-45, 48).

Officer Harney followed the Durango onto the interstate while Officer Buckley attempted to check the Durango's registration by running its license plate number in the National Crime Information Center ("NCIC") database on the cruiser's internal computer. (TR. 11-12). Officer Buckley found no record on file. Officer Buckley confirmed the Durango's license plate number, ran it a second time, and again found it was "not on file." (TR. 49-50). Officers testified that some states, like Missouri, require officers to type in an expiration year in addition to the state, and although they knew of difficulties running some non-Nebraska plates in the NCIC, they did not know of any specific problems presented by Minnesota plates. (TR. 30-31, 50, 60). Officer Harney stated their protocol involves radioing dispatch to check any license plate that officers could not find a record of in NCIC. (TR. 31). Officer Buckley subsequently asked dispatch to complete a data check of the Durango's license plate and received the information that there was no record for the Durango.[2] (TR. 50).

While following the Durango eastbound on the interstate, officers observed the Durango commit what they perceived to be an improper lane change. (TR. 12-13, TR. 52-53). Officer Harney testified that the Durango was driving in the far-right lane (lane number four) when it signaled a lane change and merged into the lane to the left (lane number three) before proceeding to merge in the next lane to the left (lane number two). Because officers believed the driver of the Durango did not activate its turn signal at least 100 feet before changing lanes as required under Nebraska law, they initiated a traffic stop. (TR. 13-16).

Officer Harney approached the driver side of the Durango and made contact with the driver, later identified as Defendant Clark. Defendant Clark did not have a driver's license. (TR. 17-18). Officer Buckley approached the passenger side of the Durango and made contact with the passenger, who initially refused to identify himself.[3] The passenger, later identified as Defendant Hanel, told officers his name was "Robert Ogborn." (Ex. 1, Gun (2) at 13:35-38). Officer Buckley

---

[2] Officers received this information from the third data check after they had initiated the stop of the Durango. (TR. 16, 55).

[3] Officers later verified the passenger as Defendant Hanel after running his fingerprints through AFIS. (TR. 56).

2

observed a wallet laying in the vehicle and requested identification from Defendant Hanel. Defendant Hanel motioned to the wallet and identified a portion of the wallet that was out of sight. Officer Buckley retrieved the wallet and found a driver's license that Defendant Hanel indicated was his. (*Id*. at 14:40-15:13). When Defendant Hanel could not state the date of birth listed on the license without Defendant Clark's help, officers requested the Nebraska State Patrol provide their portable AFIS machine as well as a drug canine. (*Id*. at 17:05-25). Shortly thereafter, Defendant Hanel identified himself as Anthony Hanel upon prompting from the officers. (*Id*. at 20:05-22). The drug canine arrived and indicated to the presence of narcotics in the vehicle. Both Defendants were searched and detained. (TR. 57; Ex.1, Gun (3) at 5:50-8:49).

Officers ran a records check with the correct identification and discovered Defendant Hanel had multiple non-extraditable warrants in Washington state. (TR. 57). The officers also found the Durango in the NCIC database with the VIN number obtained from the stop. (TR. 37, 58-59). Officer Buckley testified that the Durango's license plate was labeled "19" for the year 2019, but for the NCIC to recognize the Minnesota plate, the year "2020" needed to be entered manually. (TR. 58-59; Ex. 114).

The defendants seek suppression of any evidence found in the vehicle and on their persons, as well as any incriminating statements they made as a result the traffic stop. Both defendants argue that probable cause did not exist for officers to make the traffic stop and that any evidence recovered from the stop is therefore inadmissible as fruit of the poisonous tree. The government and the officers have reviewed the cruiser's video recording of the lane change and concede that the Durango's lane changes were proper. (TR. 15, 53-54; Filing No. 60). However, the government argues that the stop was nevertheless proper because the officers' mistake was made in good faith and was objectively reasonable.

**ANALYSIS**

Both defendants assert that the initial traffic stop of the Durango violated their Fourth Amendment rights; specifically, Defendants argue the stop was pretext for investigative work and was made without probable cause or reasonable suspicion. (Filing Nos. 53, 55). However, it is accepted that "[I]f police observe a traffic violation, no matter how minor, there is probable cause to stop the vehicle." *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016)(citing *United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012)). "This is true even if a valid traffic stop is

3

a pretext for other investigation." *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007)(internal quotations omitted). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *Fuehrer*, 844 F.3d at 772 (quoting *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)). Therefore, if the officers observed the driver of the Durango commit a traffic violation, they were permitted to stop the Durango regardless of their subjective motivations.

Defendants argue that the officers did not have probable cause to stop the Durango for the lane change violation. Nebraska law provides that, when required, a signal to move right or left "shall be given continuously during not less than the last one hundred feet traveled by vehicle before turning." Neb. Rev. Stat. § 60-6,161(2). Both officers and the government concede that Defendant Clark continuously used the Durango's turn signal for the required 100 feet and therefore did not actually commit the traffic infraction of failing to properly signal a lane change. (Filing 60). However, "'[t]he determination of whether probable cause,' or reasonable suspicion, 'existed to stop a vehicle is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'" *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012))(quoting *United States v. Sanders,* 196 F.3d 910, 913 (8th Cir. 1999)). "[I]f an officer makes a traffic stop based on a mistake, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake was 'objectively reasonable.'" *United States v. Washington,* 455 F.3d 824, 827 (8th Cir. 2006)).

The government asserts that the officers' mistake was made in good faith and was objectively reasonable. The undersigned magistrate judge disagrees that the officers' mistake was objectively reasonable. Both officers testified that although they were wearing watches, they did not use a watch or any other device to time the Durango. Instead, the officers used only their observations. Officers testified that they can determine another car's speed by comparing their cruiser's speed and distance. (TR. 66-67). In reviewing the video recording at Exhibit 1, the police cruiser's average speed was 65 miles per hour during the ten seconds the Durango moved across two lanes. During such time, the Durango continuously had its left turn signal activated. (Ex. 1, MVR 484 at 00:23-33). As such, Defendant Clark actually signaled the Durango's lane change significantly in excess of 100 feet. Under the circumstances, the undersigned magistrate judge concludes that the officers' belief that Defendant Clark violated Neb. Rev. Stat. § 60-6, 161(2) by failing to signal the Durango's movement for 100 feet was not an objectively reasonable mistake.

Despite the undersigned magistrate judge's above conclusion that officers did not have an objectively reasonable basis to stop the Durango for the lane change violation, the undersigned nevertheless finds that the initial stop was lawful because officers had reasonable suspicion that the Durango was not properly registered. Nebraska law requires a non-resident owner of a motor vehicle to properly register it in the owner's residence state. See Neb. Rev. Stat. § 60-366(2). In this case, Officer Buckley searched for the Durango's registration by running its license plate number in the NCIC database, a database that is commonly relied upon by officers. Officer Buckley received no record. Officer Buckley verified he was using the correct license plate number and ran the plate a second time, and again received the result that the Durango was "not on file." Though both officers testified that NCIC may have occasional issues running out-of-state plates, neither were aware of any problems running Minnesota plates. And, in any event, the autofill expiration year was in fact the date on the Minnesota plate—2019. (TR. 43, 58; Ex. 114). See, e.g., *United States v. Miranda-Sotolongo,* 827 F.3d 663, 669 (7th Cir. 2016)(concluding that officer had reasonable suspicion to stop a vehicle with temporary tags after both he and dispatch checked the relevant database and found no record of the car's registration). It is true that officers later found that the Durango was properly registered, but as discussed above, "[t]he determination of whether . . . reasonable suspicion existed to stop a vehicle is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *Hollins*, 685 F.3d at 706 (internal quotation marks omitted). Officers were only able to verify the Durango's registration after retrieving the VIN number from the Durango obtained during the stop. See, e.g., *Hollins*, 685 F.3d at 706 (concluding officers had reasonable suspicion to stop a vehicle with no license plate bearing an In Transit sticker that the officers could not see, although the officers were mistaken about the vehicle's registration status); *United States v. Sanchez,* 572 F.3d 475, 478-79 (8th Cir. 2009)(finding it was objectively reasonable for officer to suspect that a temporary license paper affixed to a minivan was not an official registration document from another state, justifying a stop of the minivan to investigate a violation of failure to display valid proof of vehicle registration). Under the circumstances, officers had reasonable suspicion to believe Defendant's operation of the Durango was in violation of Nebraska's vehicle registration statutes and had an objectively reasonable basis to stop the Durango to investigate the violation.

Defendants argue that all incriminating evidence or statements were fruits obtained from a traffic stop without probable cause or reasonable suspicion. Having found officers had reasonable

5

suspicion to stop the Durango, the undersigned finds that such evidence is not fruit of the poisonous tree. In consideration of the above, the undersigned recommends denying Defendants' motions to suppress.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to United States District Court Chief Judge John M. Gerrard that Defendants' Motions to Suppress Statements and Evidence and Request for Hearing (Filing No. 53; Filing No. 55) be denied.

Dated this 25th day of June, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.