IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:19-CR-54 |
| vs. | |
| ANTHONY JAMES HANEL and COURTNEY LAPARELE CLARK, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on each defendant's objection (Hanel filing 81; Clark filing 82) to the Magistrate Judge's Findings and Recommendation (filing 80), recommending that the defendants' separate but essentially identical motions to suppress (Hanel filing 53; Clark filing 55) be denied. This Court has conducted a *de novo* review of the record pursuant to 28 U.S.C. § 636(b)(1), and generally agrees with the Magistrate Judge's factual findings, analysis, and conclusions of law.

## I. BACKGROUND

In the early morning hours of February 5, 2019, Omaha Police officers John Harney and Cory Buckley were patrolling a section of southwest Omaha they described as a high-crime area when they came upon a blue Dodge Durango pulling out of a parking area. Filing 79 at 9, 43-44. Buckley noticed that the passenger was not wearing a seatbelt. Filing 79 at 45. The officers started following the Durango south on 84th Street and then onto Interstate 80 East, and attempted to run its Minnesota license plate through the National Crime Information Center (NCIC) database accessible with the laptop in their cruiser. Filing 79 at 11-12, 49. The search reported no record found. Filing 79

at 49. After confirming the Durango's license plate number, a second search on the laptop came back as "not on file." Filing 79 at 50. Buckley then made a third check, this time through dispatch, which also reported no record was found. Filing 79 at 50. As the officers continued to follow the defendants, they observed the Durango signal a lane change, but instead of changing to the next adjacent lane, the Durango changed two lanes over, which the officers believed constituted a traffic violation under Nebraska law. Filing 79 at 12-14, 51-53. A traffic stop was initiated, which led to the arrest of the defendants and search of the Durango.

The recordings of the traffic stop demonstrate that the officers initiated the stop believing that the lane change was illegal—and not specifically for the reason that the Durango was not registered.[1] Harney approached the driver, defendant Clark, who did not have her driver's license. Filing 79 at 18. Buckley approached the passenger, defendant Hanel, who refused to identify himself and was otherwise uncooperative during the initial phase of the traffic stop. Filing 79 at 55-56. After retrieving the Durango's vehicle identification number (VIN), the officers learned that it was properly registered in Minnesota, but because of the way Minnesota entered the expiration date on the plates into the NCIC database, the initial search results were erroneous. Filing 79 at 37, 58.

---

[1] On the recording, the officers indicated that they also stopped the Durango for Hanel's seatbelt violation. But the failure to wear a seatbelt in Nebraska is a secondary offense and, standing alone, would not justify a traffic stop. Neb. Rev. Stat. §§ 60-6,268 & 60-6,270. At the suppression hearing, Officer Buckley acknowledged that a traffic stop could not have been effectuated based solely on the seatbelt violation. Filing 79 at 47.

## II. DISCUSSION

The defendants filed separate, but substantively identical motions to suppress all statements made following the traffic stop and the evidence obtained as a result of the search of the Durango. Hanel filing 53; Clark filing 55. The defendants argue that the lane change executed by defendant Clark was not a violation of Nebraska law, and this supposed illegal lane change was the sole legal basis articulated by the officers for stopping the Durango at the time the stop was made. See, filing 54 at 2-5. The defendants assert that the claim of an illegal lane change was pretextual, and that there was no probable cause or an articulatable reasonable suspicion to support the officers' actions in stopping their Durango. Filing 54 at 5. In response, the government acknowledged that the lane change executed by Clark did not violate Nebraska law, but argued that the officers' mistaken belief was objectively reasonable and made in good faith, and as such, does not invalidate the seizure and search. Filing 60 at 7-10.

The Magistrate Judge, after reviewing the cruiser's video, concluded that the officers' mistaken belief regarding the lane change was not objectively reasonable and could not justify the traffic stop. Filing 80 at 4. The government has not objected to the Magistrate Judge's findings and conclusion in this regard. Further, this Court agrees with the Magistrate Judge that the officers' mistake was not objectively reasonable.

The Magistrate Judge concluded that the officers did, however, have an objectively reasonable basis to stop the Durango regarding whether the vehicle was properly registered. Filing 80 at 5. This Court agrees with the Magistrate Judge's conclusion. An officer may make a limited seizure of an individual suspected of criminal activity if the officer has specific and articulable facts, taken together with rational inferences from those facts, which reasonably

warrants an intrusion. *United States v. Stephens*, 350 F.3d 778, 779 (2003). Any traffic violation, no matter how minor, may provide probable cause for a traffic stop. *United States v. Fuehrer*, 844 F.3d 767, 772, (2016). An officer's initial incomplete observations may provide reasonable suspicion for the officer to stop a vehicle and investigate further. *United States v. Hollins*, 685 F.3d 703, 706 (2012); *United States v. Sanchez*, 572 F.3d 475, 479 (2009).

In *Stephens*, the police had information that the defendant possessed methamphetamine and a firearm. The police observed the defendant in a vehicle and a computer check of the vehicle's license plate indicated the plate tags were not on file. 350 F.3d at 779. The court held that the information obtained from the computer check provided the police with a reasonable suspicion to stop the vehicle and investigate whether the vehicle was properly registered. *Id.* at 780.

In *Hollins*, Omaha police officers stopped a SUV that did not have license plates. As an officer approached the vehicle, he noticed what appeared to be a valid In-Transit sticker, which was later determined to be valid. 685 F.3d at 705. The court held that even though the officers were mistaken about the SUV's registration status, their actions in stopping the vehicle to investigate were objectively reasonable and that there was a reasonable suspicion of a law violation justifying the traffic stop. *Id.* at 706.

In *Sanchez,* a Nebraska State Patrol trooper stopped a van that appeared to not have front or rear license plates. 572 F.3d at 476. The trooper pursued the van, and as he got closer, observed that there was a piece of paper about the size of a license plate attached to the rear. *Id.* The trooper stopped the van, and as he got closer saw that the paper was purported to be an Arizona temporary registration plate, which proved to be valid. *Id.* The court held that it was objectively reasonable at the time of the stop for the trooper to suspect

that the paper attached to the rear of the van was not an official registration document from another state. *Id.* at 478.

Similar to the cases cited above, Officers Harney and Buckley had specific and articulable facts that gave rise to a reasonable suspicion that the Durango was an unregistered vehicle, a violation of Nebraska law,[2] justifying the officers' actions in stopping the Durango to investigate further. Officer Buckley checked the NCIC data base twice and dispatch checked a third time, and each time the search failed to find a record showing that the Durango was registered. Filing 79 at 50-51.

The defendants argue, reasonable suspicion was lacking because the NCIC database was inherently unreliable and the officers were not skilled in using the database. See filing 81 at 1-2. The officers' testimony, however, demonstrated that they were familiar with the use of their in-cruiser laptop and competent with accessing the NCIC database on their laptop. Moreover, the NCIC database was not shown to be inherently unreliable in this case because it actually identified that the Durango was properly registered when the Durango's VIN was searched. Filing 79 at 58. The officers acknowledged that they had previously observed problems obtaining accurate information when searching Missouri license plates, but had not encountered problems with Minnesota plates. Filing 79 at 30-31, 60. The Court finds that the officers were competent in the use of their laptop and in accessing the NCIC database, and that the reliability of the NCIC database was at least sufficient to allow the officers to have a reasonable suspicion that the Durango might not have been registered, and stop it to investigate further by, for example, searching the Durango's VIN.

---

[2] *See* Neb. Rev. Stat. §§ 60-362 & 60-3,170.

The defendants also argue that the officers did not have a reasonable suspicion at the moment they activated their lights and effected the traffic stop because they were wrong about the legality of the lane change. See filing 81 at 2. That argument ignores the Magistrate Judge's conclusion that the traffic stop was justified by the fact that the Durango may have been unregistered, and stopping it to investigate further was objectively reasonable. Filing 80 at 5. The determination of whether there was a reasonable suspicion to stop the Durango is not to be made with hindsight, but by looking to what the officers reasonably knew at the time. *See Hollins*, 685 F.3d at 706. When the officers activated their lights and effected the stop, they reasonably believed that the Durango was not properly registered, but also wrongly believed that the driver had executed an improper lane change. There is no basis in fact or law to conclude that their erroneous belief about an improper lane change somehow cancelled out their objectively reasonable suspicion that the Durango was not properly registered. "[E]ven if an officer invokes the wrong offense at the time of an arrest, probable cause for the arrest still exists as long as the facts known to the officer would provide probable cause to arrest for the violation of some other law." *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004)). The same principle applies to an officer's reasonable suspicion to initiate a traffic stop. *See United States v. Guevara*, 731 F.3d 824, 828 (8th Cir. 2013).

Finally, the defendants argue the officers "pulled over the Dodge Durango because [they] wanted to know what its occupants were doing. Period." See filing 81 at 6. But even it that were true, once an officer has probable cause or a reasonable suspicion of a law violation, any ulterior motivation on the officer's part is irrelevant, and it is also irrelevant that the officer would have ignored the violation but for the ulterior motive. *Fuehrer*,

844 F.3d at 772. The Court adopts the Magistrate Judge's findings and recommendation that the defendants' motions to suppress be denied.

IT IS ORDERED:

1.     The Magistrate Judge's Findings and Recommendation (filing 80) is adopted.

2.     The defendants' separate motions to suppress (filing 53; filing 55) are denied.

3.     The defendants' separate objections to the Magistrate Judge's Findings and Recommendation (filing 81; filing 82) are overruled.

4.     This matter is referred to the Magistrate Judge for case progression.

Dated this 6th day of August, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge

- 7 -